## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

HAROLD DARIO RIVERA-TOLEDO,
      Prisoner,

v.
                                  Case No. 8:23-cv-2271–KKM–SPF
                                  Case No. 8:21-cr-217-KKM-AAS

UNITED STATES OF AMERICA,
      Respondent.

_____

## ORDER

    Prisoner Harold Dario Rivera-Toledo moves to vacate his conviction and sentence for conspiracy to distribute and possess with intent to distribute cocaine while on board an aircraft registered with the United States, for which he serves a 120-month sentence. *See* 28 U.S.C. § 2255. Rivera-Toledo claims his counsel rendered constitutionally ineffective assistance. Because his claims lack merit, his motion to vacate is denied.

## I.    Background

    In May 2021, Rivera-Toledo left Guaymaral, Colombia, on board an aircraft registered with the United States on a purported humanitarian mission trip to Providencia Island, Colombia. (Crim. Doc. 94 at 20–21.) Upon arrival, the Colombian National Police inspected 28 boxes on board the aircraft and found 446 kilograms of cocaine. (*Id*.)

    In July 2021, Rivera-Toledo and three others were charged in a four-count superseding indictment with conspiring to distribute five kilograms or more of cocaine knowing, intending, and having reasonable cause to believe that such

cocaine would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959(a), 969, and 960(b)(1)(B)(ii) (Count One); conspiring to possess five kilograms or more of cocaine with the intent to distribute it while on board an aircraft registered with the United States, in violation of 21 U.S.C. §§ 959(c)(1), (c)(2), 963, and 960(b)(1)(B)(ii) (Count Two); and two counts of possessing with the intent to distribute cocaine while on board an aircraft registered with the United States, in violation of 21 U.S.C. § 959(c)(2) and 960(b)(1)(B)(ii), and 18 U.S.C. § 2 (Counts Three and Four). (Crim. Doc. 8.) Under a plea agreement, Rivera-Toledo agreed to plead guilty to Count Two in exchange for the United States moving to dismiss the remaining counts against him. (Crim. Doc. 94 at 1 and 3.)

The presentence report calculated an advisory guidelines range of 135 to 168 months based on Rivera-Toledo's total offense level of 33 and his criminal history category of I. (Crim. Doc. 122 at ¶ 72.) Citing Rivera-Toledo's role in the offense, the district court varied downward from the guidelines range and sentenced him to 120 months. (Crim. Docs. 131 and 132.) Rivera-Toledo filed no appeal.

He now moves to vacate his conviction and sentence and claims that counsel was ineffective for (1) not obtaining safety-valve relief and (2) not obtaining discovery materials. (Civ. Doc. 3 at 4–5 and Civ. Doc. 11.)

## II.    Legal Standards

Section 2255 allows a federal prisoner to "bring a collateral challenge by moving the sentencing court to vacate, set aside, or correct the sentence." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1215–16 (11th Cir. 2014). But "[o]nce the defendant's chance to appeal has been waived or exhausted, [a court is] entitled to presume he stands fairly and finally convicted, especially when . . . he

already has had a fair opportunity to present his federal claims to a federal forum." *United States v. Frady*, 456 U.S. 152, 164 (1982). "[A] collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (*per curiam*) (citing *Frady*, 456 U.S. at 165). Because collateral review is not a substitute for direct appeal, a defendant must raise on direct appeal all available claims. Relief under § 2255 is reserved "for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988) (quoting *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A Sep. 1981)).  For example, a claim of ineffective assistance of counsel is a claim that "should usually be raised in a motion under 28 U.S.C. § 2255." *United States v. Curbelo*, 726 F.3d 1260, 1267(11th Cir. 2013).

"[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). The well-known *Strickland* standard continues to govern an ineffective assistance of counsel claim:

> In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive

> the defendant of a fair trial, a trial whose result is reliable.
> *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Rivera-Toledo must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691–92. To meet this burden, Rivera-Toledo must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91. A prisoner cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992); *accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)); *see also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous claim).

## III.    Analysis

### A.    Ground One

Rivera-Toledo claims that counsel was ineffective at sentencing for "ma[king] no attempt to secure safety valve relief[.]" (Civ. Doc. 3 at 4.) In his reply, he clarifies his claim and concedes that counsel advocated for safety-valve relief

but complains that counsel "did not investigate into the reasoning as to why he was denied the relief." (Civ. Doc. 11 at 1.) He argues that counsel's performance resulted in "a longer than necessary sentence." (Civ. Doc. 3 at 4.)

A district court may impose a sentence below the statutory mandatory minimum if a defendant meets certain criteria under 18 U.S.C. § 3553(f). The burden is on the defendant to show that he satisfies all the safety-valve factors. *See United States v. Johnson*, 375 F.3d 1300, 1302 (11th Cir. 2004). One of the safety-valve factors requires the defendant to show that he "has truthfully provided to the Government all information and evidence [he] has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan[.]" 18 U.S.C. § 3553(f)(5).

Rivera-Toledo is entitled to no relief on this claim because the record shows that counsel vigorously advocated for safety-valve relief but was unsuccessful because Rivera-Toledo could not show he provided truthful information about his offenses to the United States. Defense counsel objected to the presentence report and argued that Rivera-Toledo was entitled to both "safety valve [relief] upon completion of his upcoming debrief" and "a minor role adjustment of 2 points." (Crim. Doc. 122 at ¶¶ 28 and 30 and p.20.) Counsel argued that Rivera-Toledo's "job was simply to load the containers of contraband," "had no roll in the planning of the offense," and "is substantially less culpable than his coconspirators." (*Id*.) Counsel repeated this argument in a sentencing memorandum and argued, "Mr. Toledo expects to have qualified for safety valve, which would give an additional two point reduction and remove the ten year minimum mandatory he would

otherwise be subject to." (Crim. Doc. 125 at 1 and 3.) Counsel further argued (*id*.

at 2–3):

> Mr. Toledo's sole activity in this case occurred on May 23,
> 2021, when he assisted corrupted local law enforcement [to]
> load 28 boxes of contraband onto an airplane whose purpose
> was originally humanitarian. PSI 5-6. He had no role in the
> planning of the offense, he did not exercise discretion or
> decision making authority. He didn't plan it and there is no
> evidence he knew the people involved in the planning and the
> ultimate scope of the conspiracy. The quantity of drugs, the
> money involved, equity interest in the drugs, and the role in
> planning and distribution are relevant factors this court
> should consider. *See United States v. DeVaron*, 175 F.3d 930, 945
> (11th Cir. 1999).

The United States responded that Rivera-Toledo was not entitled to safety-

valve relief because he was not truthful with investigating agents during his

proffer. (Crim. Doc. 129 at 4–5.) Rivera-Toledo told the agents that he was hired to

travel on the aircraft the day before the departure and he knew little about the

purpose of the flight. (*Id*.) According to the United States, Rivera-Toledo was, in

fact, hired a week before the flight by the transportation organizer and was

specifically advised of the purpose of the flight. (*Id*.) He was hired as the load

guard in order "to confirm the entire shipment of drugs was delivered, and if not,

why not." (*Id*.)

At sentencing, Special Agent Guzman with Homeland Security

Investigations testified that Rivera-Toledo lied during his proffer. (Crim. Doc. 162

at 24.) Guzman testified that Rivera-Toledo stated that he first learned cocaine was

on board the aircraft when police officers opened the boxes in Providencia Island.

(*Id*.) But Rivera-Toledo's coconspirator, who had been cooperating with law

enforcement, advised that the two had been working together for eight years, and Rivera-Toledo knew he would be paid from the profits of the cocaine sale. (*Id*. at 19 and 26.) The district court asked Guzman, "as far as you know from the proffer last Friday, the defendant said he did not know that there was cocaine until after the flight had ended and the boxes were opened?" (*Id*. at 27.) The agent responded, "Yes." (*Id*.)

Counsel continued to advocate for safety-valve relief. She suggested that Toledo-Rivera's proffered statement that he did not know the boxes contained cocaine was not untruthful, but rather, the result of a cultural linguistic difference (*id*. at 28–29):

> I have found that among the Colombians them saying that they know something specifically is a little bit different . . . . [U]nless they see it, taste it, smell it, they are not willing to say I now that that is cocaine or I know that this fellow did something. . . . [F]or [Rivera-Toledo] to . . . say I know it was cocaine when [he] didn't see it, [he] didn't smell it, . . . [he] didn't open the boxes, is a leap for [him] culturally.

Ultimately, the district court acknowledged "the cultural linguistic disparities," but denied safety-valve relief because Rivera-Toledo testified dishonestly during the proffer (*id*. at 29 and 33):

> I don't think that Mr. Rivera-Toledo has truthfully provided testimony to the government and, therefore, I don't think he is eligible for safety valve relief. In particular, I credit the testimony of Special Agent Guzman in her testimony concerning what the defendant knew and communications he had with [Rivera-Toledo's coconspirator] and, in particular, his denial of knowing about drugs until after the flight had concluded and the boxes were opened. So I don't think he's entitled to safety valve relief for that reason.

8

Additionally, the district court denied Rivera-Toledo a minor-role reduction because he was "held accountable for exactly the amount of cocaine that he transported or assisted in transporting" and because "the evidence points to the fact that he was operating in some manner as a load guard." (*Id*. at 35.)

Rivera-Toledo cannot show that counsel performed deficiently by not successfully advocating for safety-valve relief. "[The circuit court] has long held that the fact that a particular defense was unsuccessful does not prove ineffective assistance of counsel." *Ward v. Hall*, 592 F.3d 1144, 1164 (11th Cir. 2010). The record shows counsel repeatedly advocated for safety-valve relief and attempted to recharacterize Rivera-Toledo's proffer statements as the result of cultural linguistic differences rather than as untruthful. Although the district court ultimately overruled counsel's objection to the presentence report, Rivera-Toledo cannot show that "no competent counsel would have taken the action that his counsel did take." *Chandler*, 218 F.3d at 1315. Indeed, Rivera-Toledo does not suggest what more counsel could have argued to support safety-valve relief. Rivera-Toledo's undeveloped claim "that a different strategy would have been better does not meet his burden under *Strickland*." *Lukehart v. Sec'y, Fla. Dep't of Corr.*, 50 F.4th 32, 47 (11th Cir. 2022) (citing *Ward*, 592 F.3d at 1164 ("[C]ounsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken might be considered sound trial strategy.")).

Nor can Rivera-Toledo show he was prejudiced because he cannot satisfy all the factors under 18 U.S.C. § 3553(f). To demonstrate prejudice, Rivera-Toledo must show "a reasonable probability that the result of the proceeding—i.e., the length of his sentence—would have been different absent counsel's allegedly

Case 8:23-cv-02271-KKM-SPF    Document 12    Filed 02/24/25    Page 10 of 15 PageID 93

deficient performance." *United States v. Simmons*, 799 F. App'x 718, 722 (11th Cir. 2020) (citing *Griffith v. United States*, 871 F.3d 1321, 1330 (11th Cir. 2017)). The record shows that Rivera-Toledo did not receive safety-valve relief not because of counsel's ineffectiveness but because, as stated by the district court, he did not provide truthful testimony to the United States about his offenses. *See Patton v. United States*, 259 F. App'x 194, 196 (11th Cir. 2007) (concluding petitioner could not show prejudice when she could not satisfy one of the § 3553(f) factors; *Rengifo-Valencia v. United States*, No. 19-14747-A, 2020 WL 13597893, at *1 (11th Cir. Apr. 2, 2020) (same). Accordingly, because Rivera-Toledo cannot satisfy all the § 3553(f) factors, he cannot show he was prejudiced by counsel's unsuccessful advocacy for safety-valve relief.

## B.    Ground Two

Rivera-Toledo claims that counsel was ineffective for not providing him "'*Brady* materials' that could have been in favor or against [him]." (Civ. Doc. 3 at 5.) In his reply, he clarifies that he does not claim that the United States violated *Brady v. Maryland*, 373 U.S. 83, 86 (1953) (suppression of evidence favorable to a defendant violates due process), but rather, that counsel should have obtained records that showed his "actual duties and tasks at the airport in which he was employed . . . as a baggage handler." (Civ. Doc. 11 at 2.) Because counsel failed to obtain these employment records, Rivera-Toledo argues, the United States wrongly assumed he was a load guard. (*Id.*) He believes the records could have shown that (1) his "only duty was to literally unload and load cargo[,]" and (2) his proffer statements that he did not know cocaine was on board the aircraft were

10

truthful. (Civ. Doc. 11 at 3.) And, he argues that the records "could have possibly resulted in a different outcome for a lesser sentence[.]"(Civ. Doc. 3 at 5.)

Rivera-Toledo's claim fails because it is purely speculative. Rivera-Toledo speculates that records exist that show both that he was employed in the legitimate role of baggage handler and that his only role was to unload and load cargo. However, "speculation is insufficient to carry the burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation." *See Brownlee v. Haley*, 306 F.3d 1053, 1060 (11th Cir. 2002); s*ee also Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (recognizing that vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim).

Furthermore, Rivera-Toledo cannot show he was prejudiced by counsel's performance in not obtaining records authenticating his legitimate employment as baggage handler. Even if counsel obtained such records, Rivera-Toledo admitted in the plea agreement (1) to loading 28 boxes that contained cocaine onto the aircraft and (2) to "knowingly and willfully agree[ing] to transport 446 kilograms of cocaine on board N722KR, a U.S. registered aircraft, from Guaymaral, Colombia, to Providencia Island, Colombia, . . . with the intent to distribute it to other people[.]" (Crim. Doc. 94 at 21.) Because he admitted to knowingly transporting cocaine with the intent to distribute it, he cannot show "a reasonable probability that the result of the proceeding—i.e., the length of his sentence—would have been different" absent counsel's failure to obtain his employment records. *See Simmons*, 799 F. App'x at 722 (citing *Griffith*, 871 F.3d at 1330)). Even if employment records substantiated Rivera-Toledo's legitimate role as baggage

handler, he admitted to knowingly transporting cocaine and therefore was ineligible for safety-valve relief because he was dishonest during his proffer when he professed his ignorance of the cocaine.

###    C.    Rivera-Toledo's Reply

In his reply, Rivera-Toledo attempts to raise a new claim for the first time in this action. Buried within his other arguments, he complains in two sentences that "counsel was ineffective for not filing an appeal at the conclusion of sentencing" and "counsel failed to file an appeal." (Civ. Doc. 11 at 2 and 5.) Although a district court is required to resolve every claim properly presented in a § 2255 motion, *Clisby v. Jones*, 960 F.2d 925, 936 (11th Cir. 1992), the district court is not required to address a claim that a party fails to raise until the reply. *See United States v. Howard*, 28 F.4th 180, 201, n. 6 (11th Cir. 2022) ("Arguments raised for the first time in a reply brief are not properly before a reviewing court.") (quotations and alterations omitted).

Rivera-Toledo raised no claim that counsel was ineffective for not appealing in his initial § 2255 motion nor his amended § 2255 motion on which he currently proceeds. (Civ. Docs. 1 and 3.) It is not until his reply that Rivera-Toledo first complains that counsel was ineffective for not appealing. Therefore, by waiting until his reply to advance this claim, it is not properly before the district court, and the district court shall not consider it. *See Wilson v. United States*, No. 16-15133, 2017 WL 3225903, at *1 (11th Cir. Feb. 23, 2017) (citing *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("[T]his claim was not properly raised until [the] reply brief and, therefore, was not properly before the district court.")); *see also Prada v. United States*, 692 F. App'x 572, 574 (11th Cir. 2017) (affirming the district

court's refusal to consider new arguments raised in a reply brief because petitioner "was barred from raising new claims"); *Enriques v. United States*, 416 F. App'x 849, 850 (11th Cir. 2011) ("Although pro se pleadings are construed more liberally than those filed by counsel, . . . issues not argued by a pro se litigant in his initial brief are deemed waived[,] . . . [and] we do not address arguments raised for the first time in a pro se litigant's reply brief."); *Snyder v. United States*, 263 F. App'x 778, 780 (11th Cir. 2008) (affirming the district court's ruling that a pro se petitioner's reply brief could not be construed as an amendment to add an additional claim to the motion to vacate).

Additionally, in his reply, Rivera-Toledo attempts to resurrect a claim that he first identified in his initial § 2255 motion but abandoned by excluding it from his amended § 2255 motion. (Civ. Doc. 11 at 4.) He complains that counsel was ineffective for not obtaining a zero-point offender downward adjustment under U.S. Sentencing Guidelines § 4C1.1. Rivera-Toledo listed this as his third claim in his initial § 2255 motion. (Civ. Doc. 1 at 2.) He then did not include it when he filed an amended § 2255 motion. (Civ. Doc. 2.) In his amended § 2255 motion, Rivera-Toledo pursues only two claims—that counsel was ineffective for not obtaining safety-valve relief and for not obtaining his employment records. His operative motion contains no claim concerning counsel's failure to obtain a zero-point offender downward adjustment.

"Under Rule 12 of the Rules Governing Section 2255 Proceedings, a district court may apply the Federal Rules of Civil Procedure consistent with the Rules Governing Section 2255 Proceedings." *Snyder*, 263 F. App'x at 780 n.2. "An amended pleading supersedes the former pleading; the original pleading is

abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary." *Pintando v. Miami-Dade Housing Agency*, 501 F. 3d 1241, 1243 (11th Cir. 2007) (quotations omitted and citing *Fritz v. Standard Sec. Life Ins. Co.*, 676 F.2d 1356, 1358 (11th Cir. 1982) ("Under the Federal Rules, an amended complaint supersedes the original complaint.")). Because Rivera-Toledo's amended § 2255 motion superseded his original § 2255 motion, the claim that counsel was ineffective for not obtaining a zero-point offender downward adjustment under § 4C1.1, which is absent from the amended § 2255 motion, is abandoned.

## IV.    No Certificate of Appealability

Rivera-Toledo is not entitled to a certificate of appealability (COA). A prisoner moving under § 2255 has no absolute entitlement to appeal a district court's denial of his motion to vacate. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, Rivera-Toledo must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Rivera-Toledo is entitled to neither a certificate of appealability nor an appeal in forma pauperis.

## V.    Conclusion

14

Rivera-Toledo's amended motion under § 2255 to vacate, set aside, or correct his sentence (Civ. Doc. 3) is **DENIED** and a certificate of appealability is **DENIED**. Leave to appeal in forma pauperis is similarly **DENIED**. Rivera-Toledo must obtain permission from the circuit court to appeal in forma pauperis. The clerk is directed to enter a **JUDGMENT** against Rivera-Toledo, terminate any pending motions, **CLOSE** this case, and enter a copy of this order in the criminal case.

**ORDERED** in Tampa, Florida, on February 24, 2025.

Kathryn Kimball Mizelle
United States District Judge